### WIRTH v. WIRTH et al.

(District Court, E. D. New York. July 13, 1922.)

War ⊂⊃12—Citizen may recover interest in corporate stock held by Alien Property Custodian.

Proof that stock of an American corporation, issued in the name of a German subject and taken over by the Alien Property Custodian, is the property of an estate, some of the heirs of which are citizens of the United States, *held* to entitle such heirs to recover their share of the stock.

In Equity. Suit by Philipp Wirth against Anna Wirth, Francis P. Garvan, Alien Property Custodian, and others. Decree for complainant.

Paul C. Schnitzler, of New York City, for plaintiff.

Ralph C. Greene, of Brooklyn, N. Y. (D. H. Stanley, of Washington, D. C., of counsel), for defendants Alien Property Custodian and Treasurer of United States.

Silas A. H. Dayton, of New York City, for defendants Henry R. and John N. Wirth.

CHATFIELD, District Judge. The plaintiff has sued to recover 60 shares of the Sterling Cider Company, delivered to the Alien Property Custodian in accordance with a demand made under the statute, or the proceeds of the stock, if sold. He has included as defendants his sister, Anna Wirth, whose property the 60 shares of stock were determined by the Alien Property Custodian to have been, prior to the demand made, and also Henry R. and John N. Wirth, brothers of the plaintiff.

Anna Wirth died some three weeks prior to the trial, unmarried and intestate. The defendant brothers admit the allegations of the plaintiff's complaint and ask that the property be restored to the plaintiff or to themselves.

The action is defended by the Alien Property Custodian and the Treasurer of the United States, and upon the trial the case comes down substantially to one question:

It appears that the mother of the plaintiff and the three defendant children died, leaving a will by which she provided that a house, which had been built partly from funds supplied by the mother and partly from the daughter's savings, and title to which stood in the daughter (but in which the mother had intended to reserve and had in fact enjoyed a life tenancy or occupancy), should pass to the daughter by the will. In other words, she forgave to the daughter so much of the price of the house as had been advanced by the mother or out of the family estate held by the mother.

In addition, the mother left some 40,000 marks invested in vineyards. In the year 1912, the plaintiff, Philipp Wirth, who had been in Germany in that year, brought over to the United States some 16,000 marks ($4,000), and in 1916 brought over 8,000 marks ($2,000) which he invested in the stock of the Sterling Cider Company, and which were represented by the 60 shares involved in this action. He caused the certificate to be made out in the name of his sister Anna.

Under distribution, 15 shares would have gone to each one of the four children, and 45 shares are now claimed by the plaintiff to have at all times belonged to him and his two brothers, respectively, who are all residents in and citizens of the United States.

The plaintiff concedes the right of the Alien Property Custodian to hold 15 shares representing the portion of Anna Wirth in the estate. Even after her death in March, 1922, the status of the property derived through her was not changed.

Philipp Wirth, the plaintiff, had from time to time sent to Germany moneys to support his mother, and to help his sister in caring for the mother and herself, amounting to more than the total involved in this action. All of the brothers seem to have been willing that their sister should have as much as she needed, and to have contributed their own funds for her benefit.

When the plaintiff brought the funds to the United States and invested them, he plainly treated the entire sum as undivided property, of which, for the time at least, his sister was the owner. With his sister's approval, he seems to have intended to treat the sister's funds as security for or payment of the amount which he had advanced on behalf of the mother. The sister had lived in the house in Germany and enjoyed the use or income therefrom after the mother's death.

By the terms of the mother's will, the real estate would have nothing to do with the division of the balance of the property, except that the sister might be compelled to account for such sums as had been advanced to her for her own use during her mother's lifetime. She apparently recognized that it would be fair to leave in her brother Philipp's hands the money from the mother's estate, outside of the real es-

state, and was willing that her brother Philipp should repay himself and make proper accounting for the balance, if any, to her and his brothers. Philipp, the plaintiff, wanted to make a good investment, and at the same time wished to use the money, and did not desire to have an accounting at once. He may have and probably did favor the interests of his sister rather than his brothers, knowing that they were willing that the sister should have so much of the property as she needed.

But in the meantime the war broke out, the entire estate was turned over to the Alien Property Custodian, as under the form of an investment no division of the property had been made, and it was ostensibly a portion of the estate of an alien. At the time no proof was offered to show that three-fourths, of it, at least, was claimed to belong to resident citizens.

The plaintiff and the two defendants, Henry R. Wirth and John N. Wirth, seem to be entitled to a decree establishing their right to the 45 shares representing their portion of the estate. The remaining 15 shares must, however, follow the regular administration of property in the hands of the Alien Property Custodian.

If the plaintiff had in fact had a settlement with his sister, and the moneys which he brought over as her share had in fact been paid to him for his advances, there would be no question that at the time of the seizure it had become the property of a citizen resident, rather than to continue to be the property of an alien. But this was never done. At the time the plaintiff brought the money to the United States, war was not anticipated. He brought the funds over here to invest them for the estate, and apparently was content with the understanding that, when he accounted for his sister's share, he would deduct the debt owing from her to him. When war ensued, he had property in this country belonging to an alien, which was invested in the Sterling Cider Company and which might amount to more or less.

He undoubtedly has a claim against said property in the nature of a set-off for his advances. Whether this set-off is respected as superior to such claims as may be enforced against the property of an enemy alien on final accounting by the Alien Property Custodian, or whether the death of the alien prior to such accounting changes the status of the fund, are not matters with which this action has to do. So far as this action is concerned, the decree can go so far only as to hold that the 15 shares invested by the plaintiff on behalf of his sister, Anna Wirth, should remain in the hands of the Alien Property Custodian and be accounted for in the usual course.

The remaining three-fourths of the shares will be held to be and to have been the property of the three brothers, who were not enemy aliens at the time.

Decree accordingly.